November 17.
The PRESIDENT
delivered his opinion.
This suit is in behalf of a pauper, and her descendants, for their freedom. The Jury have found a special verdict, on which the Court below has adjudged the Law for the Plaintiff, and an appeal is taken to this Court.
The Jury find, that in 1780, the State of Pennsylvania passed a Law for the gradual abolition of slavery, which they set out at length. The third section enacts, that all persons, as well negroes and mulattoes as others, who shall be born within this State, from and after the passing of this Act, shall not be deemed, and considered as servants for life, or slaves, and that all servitude for life, or slavery of children, in consequence of the slavery of their mothers, in the case of ail children born within the State from and after the passing of the Act shall be, and is hereby utterly taken away, extinguished and abolished. By the fourth section, the children of slaves born within the State after the passing of the Act, are to be held by the owners of their mothers, until they shall arrive at the age of twenty-eight years, upon the same terms and conditions, that servants bound by indenture for four years are subject to, unless the person entitled to the service of such child, shall abandon his claim, in which case, the Overseers of the Poor shall by indenture, bind out every such child as an apprentice, for a time not exceeding the age before limited. *The fifth section directs, that all slaves, or servants for life, or thirty-one years, shall be registered by their owners, with the Clerk of the County, &c., in which he resides, before the 1st November following, and that no negro or mulatto now within the State shall be deemed a slave unless his, or her name shall be entered as aforesaid on such Record, expect as after excepted. The tenth section contains the exception, which extends to domestic slaves attending upon Delegates in Congress, Foreign Ministers and Consuls, and persons passing through, or sojourning in the State, and nor becoming residents therein, and seamen, &c. employed in ships not belonging to inhabitants of the State. These are all the parts of the Law that have any bearing on the case before us. The Jury also set out an Act of Pennsylvania in 1788, explaining and amending the former, which it does not seem necessary to notice. They next *800 find the Will of Gilcrist, a citizen of Pennsylvania, made in 1782, in which he gives to his wife for life, and after her death, to his son-in-law James Robertson, and Sarah his wife, his negro woman Hannah, whom the Jury find, he claimed and treated as a slave: they find that his widow died in the Spring of 1786: that shortly after, in the Summer of 1786, Hannah had a child, the Plaintiff, Susanna; that when Susanna was about six weeks old, the said James Robertson, who then, and at the making of the Will, lived in Augusta County, Virginia, went to Pennsylvania, and brought to Augusta, Hannah, and the Plaintiff, Susanna, claiming them as his property: that the Defendant Spotts, bought Susanna of Robertson., for a valuable consideration: and they further find, that the Pennsylvania Law of 1780, remained in full force from the passage thereof until the removal of Hannah and Susanna. These are the facts on which the question depends.
In the argument, it was contended, 1st. That the case before us was not embraced by the Law of Pennsylvania, because not within the words, and meaning of the Law; "and 2dly. If it were, a Court in. Virginia would not give effect to it, and thereby confiscate the property of a citizen of Virginia.
As to the first objection, it seems to me that the case is clearly embraced by the Law of Pennsylvania. The third section includes all children born of slaves after the passage thereof, to whomsoever their mothers might belong, whether citizens of Pennsylvania, or other States. The exceptions in the tenth section are pointed to children born of slaves within the State', and excludes them from the operation of the Act, because of the ownership of Delegates to Congress, &c. These exceptions do not narrow the construction of the Act, by any possible inference as to other children born of slaves within the State, than those within the exceptions. Throughout, the Law applies to them as persons, and not as property, by which to limit its operation, by the rights of the owners of the moth ers.
The second question, then, as to the power of the State of Pennsylvania to confiscate the property of a citizen of Virginia, does not directly occur. The power of the State of Pennsylvania to change the condition of persons, held under its Law (and no other) in slavery, cannot be questioned, especially if they were not then the property of a citizen of another State, which is not the case before the Court.
If at the time the Act of 1780 passed, and went into operation, Hannah, the mother of Susanna, the Plaintiff, was the slave of Gilcrist, (which is not positively found by the verdict,) both his property in her, and her condition as a slave, were subject to the Law of Pennsylvania. It might, and did change the character of his property in her, and in so far, her condition as a slave. Before the passage of the Act of 1780, he held an absolute property in her, and her children then to be born. Afterwards, though his property in her was, as to her services, the same, her condition was so changed that she could not be the mother of a slave in Pennsylvania, and his property in her to that extent was changed. The Law of Pennsylvania was, as regarded his property Ji'in her and her condition, executed. His Will could not affect this state of things. It might pass his qualified property in her and her future offspring, according to the provisions of the Act, but it could not alter the then condition, either of Hannah, or of her offspring born after-wards : They remained as before under the Act. Susanna, the Plaintiff, was born under its operation in Pennsylvania: by it though born of a slave, she was free: and in this aspect of the case, the Court is not called on to execute the Law of Pennsylvania, but the Law of Virginia, which does not now, and did not then, permit a person free in Pennsylvania, to be held in slavery here.
If Susanna had been born in Virginia, after the removal of her mother, the question would be a different one. It might be argued, that though the Law of Pennsylvania had imparted to Hannah a new condition ; that is, that though a slave absolutely as to service, her children were not to follow her condition as in Virginia, yet that in Virginia, her condition in Pennsylvania would not protect her children born here. How that would be, it is not necessary for the Court to decide. The Judgment ought to be affirmed.
The other JUDGES, CABELL, COAL-TER, GREEN and CARR, concurred, that the Judgment be affirmed.